UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MONSOON BLOCKCHAIN STORAGE, INC.,

                 Petitioner,

-against-

MAGIC MICRO CO., LTD.,

                 Respondent.

22-CV-3114 (JGLC)

**OPINION AND ORDER**

---

JESSICA G. L. CLARKE, United States District Judge:

Petitioner seeks to confirm an arbitration award under the New York Convention that awarded Petitioner $27,000,000 in damages based on Respondent's alleged breach of a stock purchase agreement. Respondent, a publicly traded South Korean company, does not oppose the petition on the merits, but instead asks the Court to dismiss or stay this action based on principles of international comity in deference to Respondent's parallel bankruptcy action in South Korea, a proceeding in which Petitioner has also filed a claim based on the arbitration award. The Court finds that the bankruptcy proceeding warrants declining to adjudicate the petition to confirm the arbitration award at this juncture based on comity. To minimize any potential future prejudice to Petitioner – and considering that the issues in the two actions are not identical and that ambiguities remain regarding the procedural posture of the bankruptcy action – the Court stays rather than dismisses this action. Thus, the Petition is DENIED without prejudice and this action is STAYED.

## BACKGROUND

### A. The Arbitration Award

On April 14, 2021, New York-based arbitrator Stephanie Cohen (the "Arbitrator") issued an arbitration award in favor of Monsoon Blockchain Storage, Inc. ("Monsoon") with respect to

the parties' underlying breach of contract dispute. ECF No. 6-1 ("Arbitration Award" or "Award"). The underlying dispute concerned an alleged breach of a contractual agreement (the "Stock Purchase Agreement" or "SPA") by Magic Micro Co., LTD. ("Magic Micro.") to purchase shares of Series A Preferred Stock in Monsoon. *Id*. ¶¶ 2–3. Both parties participated in the arbitration and were represented by counsel. *Id*. ¶¶ 7–14. The Award found that (i) there was an operative and enforceable contract between the parties, (ii) Monsoon performed its required contractual obligations, (iii) Magic Micro failed to perform under the contract, and (iv) Magic Micro's performance was not excused. *Id*. ¶¶ 139-71. The Arbitrator awarded Monsoon $27,000,000 in damages, plus post-award interest accruing from March 15, 2019 at a compounding rate of 1% per month, $149,193.82 in legal fees and transcription costs, and $143,640.00, representing the portion of the tribunal and Arbitrator's fees incurred by Monsoon. *Id*. ¶ 192. The three-month time limit pursuant to 9 U.S.C. § 12 for a notice of a motion to vacate, modify, or correct the Award expired on August 14, 2021 without any such motion being made. ECF No. 6 ("First Myatt Decl.") ¶ 9. According to Monsoon, Magic Micro has not fulfilled its obligations under the Award. ECF No. 13 at 5.

### B.  Procedural History

In September 2021, Magic Micro filed an application for commencement of rehabilitation proceedings in the Republic of Korea ("ROK") the under the Debtor Rehabilitation and Bankruptcy Act ("ROK Rehabilitation Act") in the Suwon District Court, 1st Bankruptcy Division (the "Suwon Rehabilitation Court" or "SRC"). ECF No. 23 ("Kim Decl.") ¶ 6; ECF No. 23-1 (the "Preservation Order").

On September 27, 2021, the SRC issued an order directing the debtor to refrain from (1) "settling or providing security for any monetary debt arising before September 27, 2021," (2)

"[t]ransferring ownership of all properties belonging to the debtor subject to registration or recording, such as real estate, automobiles, construction machinery, patents, and any other property valued at 10 million [South Korean] won or more, and any other disposition of rights, liens, or leases . . . ," (3) borrowing funds, and (4) hiring employees. Preservation Order at 3–4. On the same date, the SRC also issued a "comprehensive injunction against the debtor" stating that "[a]ll rehabilitation creditors and rehabilitation secured creditors shall not go through procedures for compulsory execution, provisional seizure, provisional disposition or action for the execution of security rights based on their rehabilitation claims or rehabilitation security rights until a decision is made on the application for initiation of rehabilitation procedures in relation to this case." ECF No. 23-2 (the "Injunction Order").

On April 14, 2022, Monsoon filed the instant Petition to confirm the Award. ECF No. 1. Pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"), Monsoon initiated service of process through the Korean Central Authority ("KCA"). ECF No. 8 ¶ 3. The KCA served Respondent on August 4, 2022 at its current registered business address. *Id*. at ¶¶ 3–4; ECF No. 8-2 at 4; *see also* ECF No. 21 ("Opp.") at 5 (confirming Magic Micro's registered business address at 205 Manhae-ro). On July 8, 2022, Monsoon also sought recognition of the Award in the Netherlands. ECF No. 26-2 § 1.1.

On August 18, 2022, the SRC issued an order commencing the rehabilitation procedures for Magic Micro. ECF No. 23-3 (the "Commencement Order") at 3. The ROK bankruptcy law provides that when commencement of rehabilitation procedures has been decided, "litigation procedures on the debtor's properties shall be suspended" and that "[c]ompulsory execution . . . based on any rehabilitation claim or rehabilitation security right" – including "[p]roperty claims

3

based on grounds that arise before the rehabilitation procedures commence for the debtor" – is prohibited. ECF No. 21, App-4–5 (ROK Rehabilitation Act, Arts. 58, 59, 118).

On September 15, 2022, Monsoon filed a declaration of claim in the SRC action (the "SRC Action") seeking a total of $39,348,047.36 covering the principal, interest, legal fees, and other expenses to which Monsoon claims to be entitled in connection with the Arbitration Award ("Monsoon ROK Claim"). ECF No. 23-6 at 4.

On June 7, 2023, the SRC granted Magic Micro's application to cancel the SPA (the basis for the Arbitration Award) between Magic Micro and Monsoon on the basis that cancellation was in the best interest of Magic Micro and its creditors. ECF No. 23-7 at 10. With respect to the Arbitration Award, the SRC stated:

> Furthermore, the arbitration decision itself is based on a judgment that involves the exchange of stock and stock payment. Considering that the debtor is currently undergoing a rehabilitation process under the court's supervision, and the acquisition of "Monsoon" preferred stock, which holds minimal practical value according to the international arbitration decision, would provide no tangible benefit to the creditors or shareholders of Magic Micro. Therefore, it is deemed reasonable to terminate the original contract in order to minimize the potential harm to the parties involved.

*Id*. Based on the SRC's cancellation of the SPA, Magic Micro requested the return of the $3 million deposit that it paid Monsoon prior to execution of the SPA. ECF No. 23-8 at 3; Award ¶ 4.

On July 4, 2023, the Dutch court recognized the Award as an enforceable judgment. ECF No. 26-2 § 6.

On August 24, 2023, Magic Micro appeared in the instant action, opposed the Petition, and sought dismissal or stay of this action. ECF Nos. 19–23.

4

**LEGAL STANDARD**

Under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), the Court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207. "Article V of the Convention specifies seven exclusive grounds upon which courts may refuse to recognize an award." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005); *see Commodities & Mins. Enter. v. CVG Ferrominera Orinoco, C.A.,* 49 F.4th 802, 809 n.4 (2d Cir. 2022) (listing the seven grounds for vacatur). The party opposing enforcement of an arbitral award bears the burden of proving that one of the seven defenses under the New York Convention applies, *Encyclopaedia Universalis*, 403 F.3d at 90, and the "burden is a heavy one, as 'the showing required to avoid summary confirmance is high.'" *Olin Holdings Ltd. v. State*, 73 F.4th 92, 108 (2d Cir. 2023) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)).

A district court is not permitted to "vacate an arbitral award merely because it is convinced that the arbitration panel made a wrong call on the law." *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004). "[T]he award 'should be enforced, despite a court's disagreement with it on its merits, if there is a *barely colorable justification* for the outcome reached." *Id.* (quoting *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 260 (2d Cir. 2003)).

**DISCUSSION**

The Court first rejects Magic Micro's challenge to the Court's jurisdiction, finding that Respondent was properly served with the Petition. Turning to the merits, the Court finds that principles of international comity – in particular the ROK's interest in the equitable and orderly administration of the bankruptcy of a publicly traded Korean company – warrant declining based

5

on comity to adjudicate the Petition at this juncture. To minimize any potential future prejudice to Petitioner – and considering that the issues in the two actions are not identical and that ambiguities remain regarding the procedural posture of the bankruptcy action – the Court stays rather than dismisses this action.

## I.       Respondent Was Properly Served

Magic Micro argues that the Court lacks personal jurisdiction over it, claiming that Magic Micro was not properly served under the Hague Convention. Opp. at 6–7. Magic Micro claims it was not served at the correct address. *Id*. at 6. However, the KCA served Respondent on August 4, 2022 at its current registered business address. ECF No. 8 at ¶¶ 3–4; ECF No. 8-2 at 4; *see also* Opp. at 5 (confirming Magic Micro's registered business address at 205 Manhae-ro).

Even if service had been improper, strict compliance with the Hague Convention is not required. *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 301 (2d Cir. 2005). As Magic Micro acknowledges, the Hague Convention, together with Federal Rule of Civil Procedure 4, "stresses actual notice" *Id.* In *Burda*, the Second Circuit deemed service completed where plaintiff attempted in good faith to comply with the Hague Convention and where, as here, Respondent "does not dispute having received the complaint in this action," thus negating any potential prejudice. *Id*. at 301–02. Magic Micro has appeared in the instant action, is represented by counsel, and has opposed the Petition. ECF Nos. 19–23. Thus, it is "within the Court's discretion to deem service properly perfected under the Hague Convention, and the Court does so." *W.J. Deutsch & Sons Ltd. v. Zamora*, No. 21-CV-11003 (LTS), 2023 WL 5609205, at \*5–6 (S.D.N.Y. Aug. 30, 2023) (collecting cases within the Second Circuit deeming service properly perfected under the Hague Convention where the foreign defendant received actual notice of the action).

**II.     This Case is Stayed Due to the Korean Bankruptcy Proceeding**

Respondent asks this Court to dismiss or stay this action based on international comity. Opp. at 12–15. The Court finds, in the exercise of its discretion, that a stay of this action pending the SRC Action is appropriate. The Court reaches this conclusion based on the deference due to the foreign bankruptcy proceeding and because general factors that courts should consider when determining whether to defer to a foreign proceeding weigh in favor of a stay.

**A.  The Policy of Deference to Foreign Bankruptcy Proceedings Weighs In Favor Of A Stay**

The pendency of the bankruptcy proceedings in the ROK militates in favor of a stay of these proceedings. Generally, "[t]he mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation to exercise the jurisdiction given them.'" *Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92 (2d Cir. 2006) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). However, the Second Circuit has "recognized one discrete category of foreign litigation that generally requires the dismissal of parallel district court actions—foreign bankruptcy proceedings." *Id.* at 92–93; *JP Morgan Chase Bank v. Altos Hornos de Mexico. S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding."). "A foreign nation's interest in the 'equitable and orderly distribution of a debtor's property' is an interest deserving of particular respect and deference, and accordingly we have followed the general practice of American courts and regularly deferred to such actions." *Royal & Sun All.*, 466 F.3d at 92 (collecting cases). Such abstention in deference to foreign bankruptcy proceedings, also known as abstention comity, "aims to prevent an 'end-run' around the foreign bankruptcy proceeding by a creditor seeking to collect a claim against a foreign debtor through a

U.S. court proceeding instead of through the foreign bankruptcy case." *In re SunEdison, Inc.*, 577 B.R. 120, 131 (Bankr. S.D.N.Y. 2017) (collecting cases) (cleaned up).

The policy aims of abstention comity counsel in favor of a stay of these proceedings. The ROK bankruptcy law provides that when commencement of rehabilitation procedures has been instituted, as is the case here, "litigation procedures on the debtor's properties shall be suspended" and that "[c]ompulsory execution . . . based on any rehabilitation claim or rehabilitation security right" – including "[p]roperty claims based on grounds that arise before the rehabilitation procedures commence for the debtor" – is prohibited. ECF No. 21, App-4–5 (ROK Rehabilitation Act, Arts. 58, 59, 118). In light of this prohibition, the Court is mindful against sanctioning an end-run around a foreign bankruptcy court's "proscription against disposition of a debtor's property outside of the bankruptcy proceeding . . . ." *CSL Australia Pty. Ltd. v. Britannia Bulkers PLC*, No. 08-CV-8290 (PKL), 2009 WL 2876250, at *5 (S.D.N.Y. 2008). Consideration of the policy aims of abstention comity weighs in favor of deferring to the SRC proceeding notwithstanding the public policy in favor of arbitration. *See Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 459 (2d Cir. 1985) (deferring to foreign bankruptcy proceeding considering "the public interest in the fair and efficient distribution of assets in a bankruptcy" despite that "the strong public policy in favor of arbitration is well recognized"); *see also Oui Fin. LLC v. Dellar*, No. 12-CV-7744 (RA), 2013 WL 5568732, at *10–11 (S.D.N.Y. Oct. 9, 2013) (collecting cases).

When creditor claims are the subject of a foreign bankruptcy proceeding, deference to the foreign bankruptcy proceeding is appropriate where "the foreign proceedings are procedurally fair and . . . do not contravene the laws or public policy of the United States." *JP Morgan*, 412 F.3d at 424, 428 (internal citation omitted) (abstaining from a dispute regarding breach of

8

contract due to Mexican bankruptcy proceeding); *see also Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999) ("We have repeatedly noted the importance of extending comity to foreign bankruptcy proceedings."); *Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1000 (2d Cir. 1993) (internal citation and quotation marks omitted) ("[W]here, as here, the granting of comity to a Foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion, comity has long been recognized as appropriate."). "The burden is on the party urging the district court to defer to a foreign proceeding as a matter of comity to prove that comity is appropriate." *Moyal v. Munsterland Gruppe GmbH & Co. KG*, 539 F. Supp. 3d 305, 308–09 (S.D.N.Y. 2021) (citing *Allstate*, 994 F.2d at 999).

At this stage, the ROK's interest in the orderly administration of Magic Micro's assets favors extending comity to the Korean bankruptcy proceeding, and, based on the present record, the SRC proceedings appear to be procedurally fair and not in conflict with the laws or public policy of the United States. The ROK courts "clearly have an interest in the equitable and orderly distribution'" of the assets of Magic Micro, a publicly traded Korean company. *In re Nat'l Bank of Anguilla (Priv. Banking Tr.) Ltd.*, 580 B.R. 64, 95 (Bankr. S.D.N.Y. 2018) (internal quotation marks omitted); Award ¶ 9. Neither Petitioner nor Respondent disputes the procedural fairness of the SRC proceeding or "suggests that the actions taken by the [ ] bankruptcy court are not approved or allowed by American law." *JP Morgan*, 412 F.3d at 428.

Moreover, courts have found that "Korean bankruptcy law, and in particular the Company Reorganization Act, is substantially similar to United States law, does not discriminate against non-Korean creditors, and comports with American notions of fairness and due process." *In re Kyu–Byung Hwang*, 309 B.R. 842, 846 (Bankr. S.D.N.Y. 2004); *see also Daewoo Motor Am.,*

9

*Inc. v. Gen. Motors Corp.*, 315 B.R. 148, 158 (M.D. Fla. 2004), *aff'd*, 459 F.3d 1249 (11th Cir. 2006) ("The Court finds that the bankruptcy laws of Korea are substantially similar to the laws of the United States and comport with general notions of due process . . . . On this subject, there is no serious debate."). The SRC proceeding "provides many of the same procedural safeguards as would apply in a Chapter 11 case in the United States," which weighs in favor of affording comity thereto. *Kyu–Byung Hwang*, 309 B.R. at 846. The Court has reviewed the provisions of the ROK Rehabilitation Act filed by Magic Micro with its opposition, *see* ECF No. 21, App-1–5, and is satisfied at this stage that "the [Korean] insolvency proceedings are procedurally fair and do not contravene the laws or public policy of the United States." *Moyal*, 539 F. Supp. 3d at 309.

Monsoon's participation in the SRC Action further militates in favor of deferring to that proceeding as a matter of comity. Monsoon has filed a declaration of claim in the SRC Action seeking a total of $39,348,047.36 covering the principal, interest, legal fees, and other expenses to which Monsoon claims to be entitled in connection with the Arbitration Award. *See* ECF No. 23-6 at 4. "Having already filed a claim in the [Korean] bankruptcy proceeding," Monsoon appears to "enjoy at least the same protections and rights as [Magic Micro's] other creditors." *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 715 (2d Cir. 1987) (deferring to Swedish bankruptcy proceedings where arbitration was completed and arbitral award was issued in favor of creditor but the creditor voluntarily submitted to the foreign court's jurisdiction). The SRC proceeding appears to provide "a forum for all creditors seeking to satisfy their claims against [Magic Micro]," such that granting comity to that proceeding would not leave Monsoon "to scour the globe for the debtor's assets." *CSL Australia Pty.*, 2009 WL 2876250, at *5 (internal quotation marks omitted). That Monsoon received notice of and has actually participated in the SRC Action is an indicium of the procedural fairness of that action. *See*

10

*Allstate*, 994 F.2d at 1000 (internal citation omitted) ("[T]he fact that appellants have received notice of every step of the proceedings, have attended all scheduled meetings and court hearings, are represented on the Committees of Inspection advising the liquidators, and have filed two actions in the Australian courts, indicates that the Australian proceedings generally comport with fundamental standards of procedural fairness."); *Finanz AG Zurich*, 192 F.3d at 249–50 (affording comity to Brazilian bankruptcy proceeding where the creditor received adequate notice of the Brazilian bankruptcy proceeding); *Ecoban Fin. Ltd. v. Grupo Acerero Del Norte, S.A. de C.V.*, 108 F. Supp. 2d 349, 352 (S.D.N.Y. 2000), *aff'd sub nom.* 2 F. App'x 80 (2d Cir. 2001) (finding comity appropriate where it was "undisputed that the Mexican courts are of competent jurisdiction, and indeed that [Plaintiff] has, up to this point, participated in the [bankruptcy] actions in Mexico"). Monsoon does not meaningfully challenge the procedural fairness of the SRC Action.

Monsoon does appear to take issue with the SRC's approval of Magic Micro's application to cancel the SPA. Monsoon refers to it as "an unreasoned one-line decision," ECF No. 25 ("Reply") at 3. Nonetheless, Monsoon does not point to any procedural defects. Instead, Monsoon's participation in the SRC Action weighs in favor of deferring to that proceeding as a matter of comity.

### B. General Considerations Regarding Deference to Foreign Proceedings Weigh in Favor of a Stay

The Court also considers the factors set forth in *Royal* in concluding that this case should be stayed. The Second Circuit has articulated "five nonexclusive factors that courts should consider when determining whether to defer to a foreign proceeding, including: (i) the similarity of the parties and issues; (ii) the interests of judicial economy; (iii) the order in which the actions were filed; (iv) the adequacy of the alternative forum; and (v) the convenience of, and potential

11

prejudice to, either party." *ArcelorMittal N. Am. Holdings LLC v. Essar Glob. Fund Ltd.*, No. 21-CV-6975 (KPF), 2022 WL 4334665, at *21 (S.D.N.Y. Sept. 19, 2022) (citing *Royal & Sun All.*, 466 F.3d at 94); *see also Bank of Anguilla*, 580 B.R. at 98 (applying the *Royal* factors in the context of a stay of action in deference to a foreign bankruptcy proceeding). In sum, these factors weigh in favor of deference to the SRC Action.

Regarding the first element, Monsoon and Magic Micro are both parties to the SRC Action. With respect to similarity of the issues, "[f]or two actions to be considered parallel, the parties in the actions need not be the same, but they must be substantially the same, litigating substantially the same issues in both actions." *Royal & Sun All.*, 466 F.3d at 94 (internal citations omitted). Monsoon maintains that "the issues before the SRC and this Court are not the same—only this Court can confirm the Award and enter a U.S. judgment" and that "[t]he SRC cannot cancel or invalidate the Award because it was made in New York." Reply at 6–7. Although the actions are not identical, they both involve whether Monsoon, as a creditor of Magic Micro, is entitled to collect in the amounts set forth in the Arbitration Award for breach of the SPA. The Court agrees that Monsoon cannot obtain confirmation of the Arbitration Award in the SRC; however, a stay would serve both parties' interests and judicial economy. A stay preserves Monsoon's ability to confirm the award, while avoiding potentially conflicting decisions between the two actions. Moreover, the Court finds a stay to be the appropriate course considering that the issues in this action and the SRC action substantially overlap but are not identical. *See Bank of Anguilla*, 580 B.R. at 99 (internal citation omitted) ("When the issues litigated in the foreign and domestic proceedings are not completely similar, dismissal of the action is inappropriate, but a stay may be warranted."); *Royal & Sun All.*, 466 F.3d at 94 ("As a lesser intrusion on the principle of obligatory jurisdiction, which might permit the district court a window to determine

12

whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties, such a stay is an alternative that normally should be considered before a comity-based dismissal is entertained.").

The order in which the actions were filed does not point clearly in favor of either side. In the comity analysis, "[c]ourts have traditionally accorded great weight to the first suit filed. However, the importance of this factor is reduced when the relevant actions were filed in close temporal proximity to one another and where the first-filed action has not reached a more advanced stage than the later action." *Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428, 436 (S.D.N.Y. 2013) (cleaned up). Here, in September 2021, Magic Micro filed an application for commencement of rehabilitation proceedings in the ROK and the SRC issued the Preservation Order and the Injunction Order. Kim Decl. ¶ 6; ECF No. 23-2. In April 2022, Monsoon filed the instant Petition to confirm the Award. ECF No. 1. On August 18, 2022, the SRC issued the Commencement Order commencing the rehabilitation procedures for Magic Micro. ECF No. 23-3. This action could be "considered first in time" on the basis that the Arbitration Award, "a binding adjudication on the merits" was rendered "before the bankruptcy action[]" began. *Skandia Am. Reinsurance Corp. v. Seguros L. Republica*, No. 96-CV-2289 (SS), 1996 WL 622559, at *5 (S.D.N.Y. Sept. 20, 1996). The SRC Action could also be considered first in time because it was filed before this action was filed. It is also unclear whether the SRC Action has reached an advanced stage. Because of the close temporal proximity and overlapping sequence of the filings, this factor is neutral. *See Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*, No. 12-CV-7249 (PAE), 2013 WL 2531277, at *5–6 (S.D.N.Y. June 10, 2013) (finding the temporal sequence of the actions factor to be "neutral or close to it").

The adequacy of the alternative forum factor weighs in favor of comity-based deference for the reasons set forth in the previous section. At this stage, the Court is satisfied that the SRC proceedings appear to be procedurally fair and not in conflict with the laws or public policy of the United States.

Finally, the convenience and potential prejudice to the parties "weighs neither in favor of nor against a stay" because "no party has identified any prejudice" or noteworthy inconvenience that it will suffer. *Tarazi*, 958 F. Supp. 2d at 438. Monsoon has filed claims to enforce the Arbitration Award in this District, the ROK, and the Netherlands, and it "does not strike the Court as unusual that a judgment creditor might employ a multi-pronged litigation strategy as part of its efforts to recover on [an eight-figure] judgment against an entity purported to be engaged in a strategy of evasion." *ArcelorMittal*, 2022 WL 4334665, at *25. It is par for the course in such a situation that the parties may litigate simultaneously in multiple fora, which does not present "any exceptional issues of inconvenience or prejudice . . . ." *Id*. at 23. There is no indication that either party "would be prejudiced if they are required to maintain their actions" in the ROK where both parties are active participants. *Allstate*, 994 F.2d at 999–1000. Monsoon's speculation about the SRC's treatment of the Arbitration Award, *see* Reply at 9, does not constitute prejudice at this juncture, and the risk of any such future prejudice is assuaged by the Court's decision to stay rather than dismiss this action based on comity. To the extent Monsoon speculates that Magic Micro is acting in bad faith to get out of a contract, the proper inquiry at this stage "is not into the motives of a debtor in the foreign proceeding, but into the foreign court's ability to address, and redress, improper conduct." *Ecoban*, 108 F. Supp. 2d at 353. Moreover, as a practical matter, even if the Court confirmed the Award and this time and "entered a [] judgment in a sum certain" in favor of Monsoon, Magic Micro would still "be

14

entitled to the protections of [Korean] bankruptcy law." *Moyal*, 539 F. Supp. 3d at 310 n.3. This factor is neutral in the comity analysis.

The *Royal* factors considering the similarity of the parties and issues, the interests of judicial economy, and the adequacy of the alternative forum weigh in favor of a comity-based stay. The factors considering the order in which the actions were filed and the convenience of, and potential prejudice to, either party are neutral. Considering these factors, alongside the Second Circuit's counsel that extending comity to foreign bankruptcy proceedings is generally appropriate, the Court finds that a stay of this action pending the SRC Action is warranted. While this action is stayed, the parties are ordered to submit a joint status update **every 60 days from the date of this Order**. *See Tarazi*, 958 F. Supp. 2d at 439 (ordering parties to advise court of status of foreign litigation while case was stayed due to parallel foreign litigation). This stay is without prejudice to Monsoon renewing its Petition at a later date.

## CONCLUSION

For the reasons stated herein, the Petition is DENIED without prejudice and this action is STAYED pending the SRC Action. While this action is stayed, the parties are ordered to submit a joint status update **every 60 days from the date of this Order**.

The Clerk of Court is directed to STAY the case.

Dated: July 19, 2024
      New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge

15